AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 20-mj-6580-AOV |
| | ) | |
| TERRENCE DEHSUN WILLIAMS | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTORNIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 18, 22, 24, and 26, 2020__ in the county of __Broward__ in the
__Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1014 | False Statement to Lending Institution |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1956(a)(1)(B)(i) | Money Laundering |
| 18 U.S.C. § 1957(a) | Engaging in Transactions in Unlawful Proceeds |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Justin A. Brannon
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim. 4.1 by Facetime.

Date: November 6, 2020

*Judge's signature*

City and state: Fort Lauderdale, Florida

Hon. Alicia O. Valle
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Justin A. Brannon, being first duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND AND INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been employed with the FBI since approximately May 2016. I am currently assigned to investigate, among other things, bank fraud, money laundering, and other frauds.

2. This affidavit is made in support of a criminal complaint charging TERRENCE DESHUN WILLIAMS ("WILLIAMS") with violations of Title 18, United States Code, Sections 1014 (False Statement to a Lending Institution), 1344 (Bank Fraud), 1956(a)(1)(B)(i) (Money Laundering), and 1957(a) (Engaging in Transactions in Unlawful Proceeds).

3. This affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means. This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## OVERVIEW OF THE SCHEME AND THE PAYCHECK PROTECTION PROGRAM

### *Overview of the Paycheck Protection Program*

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and

certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

6. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

2

### *Background of WILLIAMS and Overview of the Scheme*

8. The United States is investigating a fraudulent application submitted in the name of a company WILLIAMS formed and controlled, Williams Consulting Group LLC ("Williams Consulting"), to a lender approved by the SBA. On approximately June 18, 2020, WILLIAMS, the head basketball coach for a Fort Lauderdale, Florida, high school, sought approximately $984,710.00 in PPP funds, claiming that the loan was for the purpose of paying salaries of 67 employees, utilities, and mortgage interest or rent. WILLIAMS falsely claimed that Williams Consulting had paid millions of dollars in payroll in 2019 and 2020. In truth, WILLIAMS's company, Williams Consulting, did not pay any employees, utilities, mortgage interest or rent. Florida Department of Revenue records indicate that Williams Consulting claimed no employees on its payroll.

9. The lender approved the application and paid WILLIAMS $984,710.00 in the form of a PPP loan. Instead of funding payroll, WILLIAMS spent the PPP money on personal expenses and laundered it through several bank accounts.

### *The Lending Bank*

10. Bank A is a financial institution federally insured by the Federal Deposit Insurance Corporation ("FDIC") and based in Salt Lake City, Utah. Bank A participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

### *False Statements on PPP Application*

11. WILLIAMS made a number of false representations on his PPP loan application.

3

12. WILLIAMS falsely represented the Tax Identification Number (TIN) of Williams Consulting. Instead of listing the entity's actual Employer Identification Number (EIN), 81-5007768, WILLIAMS stated that the entity's EIN was 81-5007764.

13. In support of this representation, WILLIAMS included six tax forms, all bearing the incorrect EIN, he had purportedly filed with the IRS on behalf of Williams Consulting: a 2019 Form 940 (Employer's Annual Federal Unemployment Tax Return) and five Form 941s (Employers Quarterly Federal Tax Return) for 2019 and 2020Q1.

14. Only the first page of each form was filled out, however, and none of the forms were signed. Nor did any of the forms set forth how Williams Consulting actually paid its payroll tax obligations.

15. On the application, WILLIAMS also falsely represented the number of employees Williams Consulting had, and the company's average monthly payroll. WILLIAMS claimed that the company had 67 employees and an average monthly payroll of $393,884.00.

16. A review of Williams Consulting's bank records, however, reveals no such payroll activity. In fact, a review of Williams Consulting's bank records from January through May of 2020 shows that the company paid out, on average, approximately $6,262.17 each month, not $393,884.00. Furthermore, the $6,262.17 average includes all account debits—including payments to, among others, Wal-Mart, Macy's, Target, and Pollo Tropical—not wages. Furthermore, the account records do not identify any payments to a payroll company during this time.

17. The Florida Department of Revenue requires employers to report records of wages paid to employees by Florida employers as part of the payment of reemployment tax. The Florida Department of Revenue's records indicate that Williams Consulting did not report records of

4

wages paid to any employees. Further, Williams Consulting only registered to report such records in July of 2020, the month after it received the PPP loan.

### *PPP Proceeds Spent on Personal Items and Laundered Through Bank Accounts*

18. Rather than use the money as required, WILLIAMS spent the loan proceeds on personal items and engaged in a series of transactions designed to conceal the nature and source of the funds.

19. On June 22, 2020, WILLIAMS received the proceeds of the PPP loan into Williams Consulting's account at Bank B, an FDIC-insured bank headquartered in Cherry Hill, New Jersey.

20. That same day, WILIAMS received into the same account $494.00 from the "FL DEO" for "UI Benefit." Based on my training and experience, I know that "FL DEO" stands for Florida Department of Economic Opportunity and "UI Benefit" stands for Unemployment Insurance Benefits.

21. Also on this date, WILLIAMS opened three accounts at Bank C, an FDIC-insured bank headquartered in Stuart, Florida: a savings account taken out in WILLIAMS's name; a checking account taken out in WILLIAMS's name; and a business checking account taken out in the name Williams Consulting.

22. The next day, June 23, 2020, WILLIAMS used the Williams Consulting account at Bank B for a $4,872.94 payment at Audi of Fort Lauderdale.

23. On June 24, 2020, WILLIAMS wired $934,000 from the Williams Consulting account at Bank B to the newly-opened Williams Consulting account at Bank C.

24. The following day, June 25, 2020, WILLIAMS transferred approximately $445,985 from the Williams Consulting account at Bank C to the savings and checking accounts in WILLIAMS's name at Bank C.

5

25. On June 26, 2020, WILLIAMS wrote himself a check for $25,000, drawn on the checking account opened in his name at Bank C. WILLIAMS cashed the check that same day. The payment was funded entirely with proceeds of the PPP loan.

## CONCLUSION

26. Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

- On or about June 18, 2020, in the Southern District of Florida and elsewhere, the defendant, TERRENCE DESHUN WILLIAMS, did knowingly make a false statement and report for the purposes of influencing the action of a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation in connection with a loan application, in that the defendant falsely represented on his application for a PPP loan to Bank A that his company, Williams Consulting Group LLC, had an average monthly payroll of approximately $393,884.00, when in truth, it did not have such a monthly payroll, in violation of Title 18, United States Code, Section 1014.

- On or about June 22, 2020, in the Southern District of Florida and elsewhere, the defendant, TERRENCE DESHUN WILLIAMS, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain any of the monies and funds owned by, and under the custody and control of Bank A, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit $984,710.00 into an account controlled by the defendant, in violation of Title 18, United States Code, Section 1344.

- On or about June 24, 2020, in the Southern District of Florida and elsewhere, the defendant, TERRENCE DESHUN WILLIAMS, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, namely, bank fraud, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

6

- On or about June 25, 2020, in the Southern District of Florida, and elsewhere, the defendant, TERRENCE DESHUN WILLIAMS, did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000.00, specifically, the cashing of a check he wrote to himself in the amount of $25,000.00, which the defendant knew was derived from a specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Section 1957(a).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Justin A. Brannon*
Special Agent Justin A. Brannon
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime on this __6th__ day of November, 2020, in Fort Lauderdale, Florida.

*Alicia O. Valle*
HONORABLE ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

7